# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 14, 2011

## STATE OF TENNESSEE v. JASON WAYNE WHITE

### Appeal from the Circuit Court for Robertson County
### No. 08-0238    John H. Gasaway, Judge

### No. M2010-02260-CCA-R3-CD - Filed October 4, 2011

The defendant, Jason Wayne White, appeals the revocation of his probation, claiming that the trial court abused its discretion by revoking his probation and ordering execution of the original sentence.  Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Roger E. Nell, Public Defender; Daniel Ufford (on appeal), and Ann M. Kroeger (at hearing), Assistant District Public Defenders, for the appellant, Jason Wayne White.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Originally charged with aggravated sexual battery, the defendant entered a plea of guilty on June 29, 2009, to attempted aggravated sexual battery and received a sentence of six years to be served on supervised probation.  The nature of the defendant's conviction offense required that he meet the additional obligations of sexual offender probation and be subject to community supervision for life.

In a July 16, 2010 probation violation report, the defendant's probation officer, Garen Blanchard, alleged that the defendant had violated the terms of his probationary sentence by receiving sexually explicit e-mails, by failing to register his e-mail address with

the Tennessee Bureau of Investigation, by using drugs, by frequenting establishments whose primary purpose was to sell alcohol, by possessing pornographic materials, by failing to participate in sexual offender treatment, and by dating women with minor children. A probation violation warrant that issued on July 16, 2010, contained the same allegations. An amended warrant that issued on September 3, 2010, added allegations that the defendant had violated his probation by driving past the victim's home, by setting up an unregistered e-mail address, by residing with an unrelated minor, and by residing within 1,000 feet of a public park.

At the October 1, 2010 probation revocation hearing, Mr. Blanchard testified that the defendant was originally supervised by other probation officers and came under Mr. Blanchard's supervision on April 15, 2010. Mr. Blanchard met with the defendant for the first time on May 10, 2010. During that meeting, the pair discussed the defendant's going to a movie at Opry Mills, and Mr. Blanchard clarified that the defendant was not permitted to go to the mall.

In June 2010, the defendant submitted to a polygraph examination as required as part of his sexual offender probation, and the report was sent to Mr. Blanchard on June 11, 2010. He met with the defendant that same day, and the two discussed the various admissions the defendant made during the examination. During that meeting, the defendant admitted violating the terms of probation in the manner Mr. Blanchard later included in the probation violation report. Specifically, the defendant admitted (1) that he had "united with . . . 11 adult females who had minor children"; (2) that he had possessed pornographic magazines and DVDs; (3) that he had failed to disclose sexual thoughts about the victim to his therapist; (4) that he viewed pornographic movies via an impermissible internet connection; (5) that he had used a cellular telephone to take a nude photograph of a sexual partner; (6) that he failed to register his e-mail address with the TBI; (7) that he had used and possessed alcohol, marijuana, cocaine, methamphetamine, OxyContin, and Lortab; and (8) that he had frequented establishments whose primary purpose was the sale of alcohol.

According to Mr. Blanchard, as part of the defendant's probation, he was subject to tracking via a global positioning system ("GPS"). Computer printouts tracking the defendant's movements revealed that he had traveled outside of the county for overnight visits without the permission of his probation officer and that the addresses to which he had traveled were "not appropriate" for a registered sex offender. Mr. Blanchard said that the defendant had spent the night on several occasions at a residence in Sumner County that was within 1,000 feet of a public park. He explained that the defendant had permission to visit the address but not stay overnight. He said that the defendant initially told him the address belonged to his mother but in later conversation admitted that the address belonged to a cousin of his and that his girlfriend lived next door. Mr. Blanchard then informed the

defendant that he was not permitted to visit the Sumner County residence.

GPS records also established that the defendant had traveled to several different addresses in Robertson County without permission and in violation of the conditions of his probation.[1] On July 4, 2010, the defendant traveled to a lake in Smith County without the permission of his probation officer and in violation of the conditions of his probation. Mr. Blanchard confirmed that the defendant had never asked permission to travel to either Robertson or Smith Counties.

During cross-examination, Mr. Blanchard conceded that the defendant admitted having sexual thoughts about the victim during his sexual offender treatment. He also acknowledged that he could not verify whether the e-mail address the defendant had admitted having was currently active. Mr. Blanchard admitted that the bulk of the defendant's admitted drug use occurred shortly after his release from jail. Mr. Blanchard acknowledged that, according to the sexual offender treatment provider, the defendant was in compliance with his treatment. He nevertheless maintained that the defendant's failure to reveal his sexual thoughts about the victim to his treatment provider indicated that he "was not actively participating." Mr. Blanchard admitted that the defendant never traveled outside the county after being told explicitly not to do so and that the original document containing the restriction on out-of-county travel did not appear in the defendant's file.

The defendant testified that upon his release from jail, he went to the Nashville Rescue Mission because all of his relatives had minor children in their homes. He said that while homeless he turned to heavy drug use. Despite his heavy drug and alcohol use, he reported to his probation officer every two weeks. He then checked himself into a residential drug and alcohol rehabilitation program, where he stayed for 30 days. When he completed the program, he returned briefly to the homeless shelter and participated in "project return," which he described as a program to assist recently released inmates in obtaining "housing, clothing, food, job." He began his sexual offender treatment on December 3, 2010, and attended every Saturday, missing only three or four that he made up on the following Wednesday. The defendant testified that he became employed with a non-profit organization and maintained that employment until his arrest for the probation violation. He said he felt that he had begun to turn his life around.

The defendant claimed that although he had admitted receiving a sexually explicit e-mail, he had not really done so. He explained that "a gentleman named Brian" who

---

[1]Although the defendant's conviction originated in Robertson County, he was apparently under probation supervision in Davidson County and required to remain in Davidson County as a condition of his probation.

-3-

"hangs out at the hot dog stand" in front of the building where the defendant works offered to send him a nude photograph of a woman and that he gave "Brian" an "e-mail address that hasn't been active probably in . . . two, three years. . . . And I never saw the picture because the e-mail address is not no good." He claimed that he signed the document admitting the violations of his probation "just to get away from Mr. Blanchard" before he lost his temper.

The defendant admitted viewing pornographic videos but claimed that the materials belonged to a roommate. He denied buying, owning, or possessing pornographic materials of any kind.

The defendant said that he "never once had sexual thoughts for [the] victim," claiming that he thought of his victim only in terms of his treatment. He said that his admission in the polygraph examination had been taken out of context.

The defendant claimed that he had been given permission by his previous probation officer to go to the locations shown on the GPS records. He said he "went to the same places every time" and that each of his probation officers had told him that "as long as it's the same place," he would not get into trouble. The defendant admitted going to see a movie at Opry Mills but said that he had not been told he could not go to the movies. He said that Mr. Blanchard was the first probation officer to tell him that he could not go to the movies.

During cross-examination, the defendant admitted drug and alcohol use following his release onto probation, but he said that he had not used drugs during the seven months leading up to the hearing and had not used alcohol for nearly four months. He also admitted having relationships with women who had minor children, claiming that he misunderstood the rule. He said that he thought the relationships were permissible so long as he did not have contact with the children.

The defendant claimed that Mr. Blanchard had given him permission in May 2010 to travel to a tattoo shop in Robertson County and his mother's residence in Sumner County. He said that on another occasion he did not get permission but called the probation office and left a message alerting Mr. Blanchard that he would be traveling out of the county. He stated that he similarly left a message when he traveled to Smith County on July 4, 2010. The defendant claimed that the probation office had been "having troubles with their phones" and that "something . . . might have happened with the answering machine messages." He said that he "figured it wouldn't hurt" if he traveled out of the county because he was otherwise in compliance with the terms of his probation.

The defendant testified that the residence he frequented in Sumner County

belonged to a woman named Tina Neal, that he had known her for ten years, and that he had gotten permission from a previous probation officer to do "yard work and some painting of windows" along with "a gentleman named Mr. Holt." The defendant denied telling Mr. Blanchard that the address belonged to his cousin or to his mother. He also maintained that he "never once stayed out of Davidson County overnight."

On rebuttal, Mr. Blanchard denied ever giving the defendant permission to travel to a Robertson County tattoo parlor. He explained the procedure probationers are to follow for out-of-county travel: "If a probationer is to go out of county they are to call and let us know the reasoning behind that; and if it's something other than job related they're to receive verbal permission from us." He said that the procedure "would have been [explained] at some point during [the defendant's] probation." Mr. Blanchard testified that the defendant never left a message stating he would be traveling out of the county. He conceded that he had given the defendant permission to travel to Sumner County "to visit his mother" until Mr. Blanchard discovered "that it was not his mother, at which time [he] told [the defendant] to never leave the county again." He said he had never given the defendant permission to travel to a residence belonging to Tina Neal for the purpose of doing yard work. Mr. Blanchard said that the only proof that the defendant spent the night at the Sumner County residence came from the GPS printouts.

At the conclusion of the hearing, the trial court revoked the defendant's probation, observing that the defendant "by his own admission . . . used alcohol at least 50 times, marijuana at least 20 times, cocaine at least ten times, and methamphetamine at least two times"; that "he has involved himself in being around pornographic material, which is something that he is not supposed to be around"; that "he's had sexual experiences in that 13 month period with 11 different women, and says that some, if not all of them, had minor children"; and that he "violated the G-P-S monitoring process." The court noted that the defendant's "explanations and his reasoning are always right there on the edge, right there on the margin." The trial court stated that it was "mindful of the progress" the defendant had made while on probation but observed that "at the same time that he's been doing that he just has to flirt with pornographic material, he has to flirt with being around kids, . . . he just can't bring himself [] to follow the rules about drugs and alcohol." The court found by a preponderance of the evidence that the defendant had violated the terms of his probation "by consuming alcohol, using marijuana, cocaine and methamphetamine, by being in the company of others with minor children, by using computers by his own admission and/or cellphone to view pornography, he violated the G-P-S monitoring procedure by going to places that he did not have permission to go." The court concluded that "given the extent to which this was done, it's not like he used marijuana once, it's not like he was around a minor child inadvertently, it's not like these infractions were happenstance. . . . [T]he extent to which he violated these conditions shows a disregard for the responsibility that he has to live

in accordance with these stringent requirements." Based upon these findings, the trial court ordered the defendant to serve his sentence in the Department of Correction.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Terry Phelps*, ___S.W.3d ___, No. M2008-01096-SC-R11-CD, slip op. at 10 (Tenn., Nashville, Dec. 16, 2010). "In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).[2]

On appeal, the defendant concedes that admissions made during a polygraph examination are admissible evidence but claims that their use "works an odd, backward, and unjust result." We need not reach the merits of this claim, however, because the defendant admitted each of the violations relied upon by the trial court to support revocation of his probation during the revocation hearing. Although the defendant offered a variety of excuses and explanations for the violations, the trial court clearly found them lacking. The defendant asks this court to "craft a wholly just remedy" and order the defendant returned to probation

_____

[2]In *Harkins*, our supreme court applied the "no substantial evidence" language from *Grear* to review the trial court's revocation of Harkins' community corrections sentence despite the fact that *Grear* did not involve review of the revocation of probation. Instead, at issue in *Grear* was the trial court's denial of probation. *Grear*, 568 S.W.2d at 285 ("The issue presented in this criminal case is whether the Court of Criminal Appeals erred in reversing the action of the trial court in denying the respondent's application for a suspended sentence."). Moreover, the statute governing probation revocation in effect at the time of both *Harkins* and *Grear* contained no specific burden of proof to be met before the trial court could revoke probation. *See* T.C.A. § 40-21-106 (1982). In the absence of a statutorily-specified burden of proof, our courts concluded that "[t]he proof of a violation of the terms of probation need not be beyond a reasonable doubt but is sufficient if it allows the trial court to make a conscientious and intelligent judgment." *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984) (citing *Roberts v. State*, 584 S.W.2d 242, 243 (Tenn. Crim. App. 1979)). The 1989 Sentencing Act, however, added a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-3111(e)(1). Given the inapt citation of *Grear* and the addition of a burden of proof in the 1989 Act, we question whether the "no substantial evidence" language of *Harkins* remains applicable to the determination whether the trial court abused its discretion when revoking probation.

given that he has been incarcerated for more than a year since being arrested on the violation warrant. Regardless of what remedy the defendant deems "just," our standard of review requires that we examine the decision of the trial court for an abuse of its discretion. Having done so, we find that the trial court did not abuse its discretion by revoking the defendant's probation and ordering that he serve his sentence in confinement.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE